**No. 26-6950**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**A.M.A.S.**,
Plaintiff-Appellee,

v.

**MARKWAYNE MULLIN, et al.**,
Defendants-Appellants.

On Appeal from the United States District Court
for the District of Arizona
District Court Case No. 26-cv-06601-PHX-JCH

# APPELLANTS' MOTION FOR STAY PENDING APPEAL AND IMMEDIATE ADMINISTRATIVE STAY

## EMERGENCY MOTION UNDER CIRCUIT RULE 27-3
## RELIEF REQUESTED BY OCT. 23, 2026

BRETT A. SHUMATE
Assistant Attorney General

DREW C. ENSIGN
Deputy Assistant Attorney General

SARAH WELCH
Counsel to the Assistant Attorney General

MATTHEW P. SEAMON
Assistant Director

MARY L. LARAKERS
Senior Litigation Counsel
U.S. Department of Justice,
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, D.C. 20044

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 16. Circuit Rule 27-3 Certificate for Emergency Motion

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form16instructions.pdf*

**9th Cir. Case Number(s)** 26-6950

**Case Name** A.M.A.S. v. Mullin et al.

I certify the following:

The relief I request in the emergency motion that accompanies this certificate is:

a stay of the district court's order (Dkt. 14) to facilitate the alien appellee's return to the United States.

Relief is needed no later than *(date)*: 10/23/2026

The following will happen if relief is not granted within the requested time:

The district court has ordered the government to immediately "take all available steps" to facilitate the return of the alien Appellee to the United States. Dkt. No. 14. If relief is not granted, the government will be forced to continue to take steps to facilitate the alien Appellee's return to the United States.

I could not have filed this motion earlier because:

The district court issued the order on October 6, 2026. The government sought authorization to appeal from the Office of the Solicitor General. After receiving authorization, counsel for the government worked expeditiously to draft the attached motion to stay which required several layers of review within the Department of Justice and the Defendant agencies.

I requested this relief in the district court or other lower court: ◉ Yes ○ No

If not, why not:

I notified 9th Circuit court staff via voicemail or email about the filing of this motion: ◉ Yes ○ No

If not, why not:

I have notified all counsel and any unrepresented party of the filing of this motion:

On *(date)*: Oct 22, 2026

By *(method)*: email

Position of other parties: oppose

Name and best contact information for each counsel/party notified:

Dana Michelle Camilleri: dana@arizonaimmigration.net
Ami Hutchinson: ami@arizonaimmigration.net
Jesse Evans-Schroeder: jesse@arizonaimmigration.net,
Matthew Harrison Green: matt@arizonaimmigration.net

I declare under penalty of perjury that the foregoing is true.

**Signature** /s/ Mary L. Larakers **Date** 10/22/2026

*(use "*s/[typed name]*" to sign electronically-filed documents)*

# TABLE OF CONTENTS

INTRODUCTION ........ 1

BACKGROUND ........ 3

ARGUMENT ........ 8

I. THE SUPREME COURT'S STAY IN *D.V.D.* MANDATES A STAY IN THIS LIKE CASE. ........ 8

II. THE GOVERNMENT WILL LIKELY SUCCEED ON THE MERITS ........ 12

A. Rule 23(b)(2) and res judicata prevent Plaintiff from bringing claims that duplicate those brought by the *D.V.D.* class. ........ 12

1. Plaintiff is a member of the D.V.D. class and cannot opt out. ........ 12

2. Plaintiff's separate lawsuit is barred by res judicata. ........ 18

B. Defendants are likely to succeed in this appeal. ........ 20

C. The district court lacked authority to order Plaintiff's release from foreign custody. ........ 22

III. THE EQUITABLE FACTORS FAVOR A STAY PENDING APPEAL ........ 24

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*A.A.M. v. Andrews*,
815 F.Supp.3d 1124 (E.D. Cal. 2025) .......... 17

*AFGE v. Trump*,
148 F.4th 648 (9th Cir. 2025) .......... 25

*Andriasian v. INS*,
180 F.3d 1033 (9th Cir. 1999) .......... 21-22, 22

*Bryan v. Werner*,
516 F.2d 233 (3d Cir. 1975) .......... 14

*Califano v. Yamasaki*,
442 U.S. 682 (1979) .......... 25

*Cooper v. Fed. Reserve Bank*,
467 U.S. 867 (1984) .......... 13, 19

*Crawford v. Bell*,
599 F.2d 890 (9th Cir. 1979) .......... 13, 15

*DHS v. D.V.D.*,
145 S. Ct. 2153 (2025) .......... 1, 4

*DHS v. D.V.D.*,
145 S. Ct. 2627 (2025) .......... 1, 4, 19

*DHS v. D.V.D.*,
2026 WL 2917860 (U.S. Sept. 29, 2026) .......... 1, 5

*D.V.D. v. D.H.S.*,
821 F. Supp. 3d 102 (D. Mass. 2026) .......... 5, 15-16

*D.V.D. v. DHS*,
778 F. Supp. 3d 355 (D. Mass. 2025) .......... 3, 4, 12

*Elshourbagy v. Bondi*,
817 F.Supp.3d 1102 (W.D. Wash. 2025) .......... 17

*Gakou v. Warden of Prairieland Det. Ctr.*,
2026 WL 3044209 (5th Cir. Oct. 10, 2026) .............................. 2, 8, 14

*Garcia v. Thomas*,
683 F.3d 952 (9th Cir. 2012) .................................................... 21, 22

*Ghamelian v. Baker*,
2025 WL 2049981 (D. Md. July 22, 2025) ...................................... 14

*Gilespie v. Crawford*,
858 F.2d 1101 (5th Cir. 1988) ........................................................ 14

*Goff v. Menke*,
672 F.2d 702 (8th Cir. 1982) .......................................................... 14

*Groseclose v. Dutton*,
829 F.2d 581 (6th Cir 1987) ............................................................ 14

*Hollingsworth v. Perry*,
558 U.S. 183 (2010) ........................................................................ 24

*Horns v. Whalen*,
922 F.2d 835 (4th Cir. 1991) .......................................................... 14

*I.V.I. v. Baker*,
2025 WL 1519449 (D. Md. May 27, 2025) ...................................... 14

*Ibarra-Perez*,
154 F4th 989 (9th Cir. 2025) .......................................................... 20

*Kiyemba v. Obama*,
561 F.3d 509 (D.C. Cir. 2009) ........................................................ 21

*McNeil v. Guthrie*,
945 F.2d 1163 (10th Cir. 1991) ................................................ 13, 18

*Munaf v. Geren*,
553 U.S. 674 (2008) ........................................................................ 20

*Nat'l TPS All.*,
146 S. Ct. .................................................................................... 9, 25

*NIH v. Am. Pub. Health Ass'n*,
145 S. Ct. 2658 (2025) ........................................................................ 8

*Noem v. Abrego Garcia*,
145 S. Ct. 1017 (2025) .................................................................. 23

*Noem v. Nat'l TPS All.*,
146 S. Ct. 23 (2025) ..................................................................... 2, 8, 9

*Norris v. Slothouber*,
718 F.2d 1116 (D.C. Cir. 1983) ..................................................... 13-14

*Ojukwu v. Lyons*,
2026 WL 3032742 (6th Cir. Oct. 9, 2026) ................................ *passim*

*Pride v. Correa*,
719 F.3d 1130 (9th Cir. 2013) ........................................................ 15

*Qasemi v. Kurzdorfer*,
2025 WL 2938607 (W.D.N.Y. Oct. 16, 2025) .............................. 14, 15

*Reach Cmty. Dev. v. DHS*,
174 F.4th 1143 (9th Cir. 2026) ......................................................... 7

*Riley v. Bondi*,
606 U.S. 259.265 (2025) ................................................................... 5

*Sanchez v. Bondi*,
2025 WL 2550646 (D. Colo. Aug. 20, 2025) ..................................... 14

*Solis Nolasco v. Noem*,
820 F. Supp. 3d 398 (D. Md. 2026) .................................................. 14

*Torres v. Blanche*,
2026 WL 2163550 (D. Nev. July 27, 2026) ....................................... 17

*Tripati v. Henman*,
857 F.2d 1366 (9th Cir. 1988) .......................................................... 19

*Trump v. Boyle*,
145 S. Ct. 2653 (2025) ............................................................. *passim*

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ................................................................... 13, 14

*Washington v. Trump*,

847 F.3d 1151 (9th Cir. 2017) .......................................................... 25

**Statutes**

8 U.S.C. §1231 ....................................................................................... 5
8 U.S.C. §1252 ............................................................................... *passim*
28 U.S.C. §1361 ................................................................................ 6, 7

**Other**

8 C.F.R. § 1208.17 ............................................................................ 5, 6
Fed. R. Civ. P. 23 ............................................................................. *passim*
Ninth Circuit Rule 27 ............................................................................. 29

# INTRODUCTION

This appeal arises from a district court's remarkable decision to defy Supreme Court stay orders, flout the Federal Rules of Civil Procedure, and intrude on the Executive Branch's broad authority over immigration matters and foreign relations. The Supreme Court determined that the Department of Homeland Security (DHS) is permitted to carry out so-called third country removals pursuant to DHS's Guidance Regarding Third Country Removal ("DHS Guidance"). But the district court ordered contrary relief. Months after DHS removed Plaintiff under the DHS Guidance, the district court directed the government to "take all available steps to facilitate Plaintiff's release from custody in Equatorial Guinea" and enjoined the government from removing Plaintiff to any other third country without additional procedures beyond the DHS Guidance. This Court should stay that astonishing order.

As a threshold matter, the Supreme Court's stay orders in *D.V.D. v. DHS* demand a stay pending appeal in this action. *See* 2026 WL 2917860 (U.S. Sept. 29, 2026); 145 S. Ct. 2627 (2025); 145 S. Ct. 2153 (2025). As two courts of appeals have already recognized, the Supreme

Court's recent stay in *D.V.D.* squarely controls cases, like this one, where an individual *D.V.D.* class member seeks to interfere with his or her removal to a third country based on legal theories that are being litigated in the class action. *Ojukwu v. Lyons*, 2026 WL 3032742 (6th Cir. Oct. 9, 2026); *Gakou v. Warden of Prairieland Det. Ctr.*, 2026 WL 3044209 (5th Cir. Oct. 10, 2026). This case, filed by a *D.V.D.* class member and seeking relief on the same claims, is plainly just "like" *D.V.D.*, so the Supreme Court's stay decisions control how this Court "exercise[s] its equitable discretion." *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025); *see also Noem v. Nat'l TPS All.*, 146 S. Ct. 23, 24 (2025) (stay warranted when "the parties' legal arguments and relative harms" remained "generally" the same as in previously granted stay application).

Regardless, the government is likely to succeed on the merits. Plaintiff is a *D.V.D.* class member and is not permitted to opt out of that class. The district court erred by nonetheless permitting him to litigate his claims individually, receiving another bite at the apple in another court. This blatant claim splitting nullifies Rule 23(b)(2). And if that were not enough, the government is likely to succeed for the same

jurisdictional and merits reasons it is likely to succeed in *D.V.D.*, as the Supreme Court has repeatedly agreed.

Finally, the equitable factors favor the government. By ordering the Executive to facilitate the return of a criminal alien, with a final order of removal, who is currently alleged to be in the custody of a foreign government, the district court's order invades the Executive's prerogative to execute removal orders and conduct foreign relations. This Court should grant a stay pending appeal.

## BACKGROUND

**A. *D.V.D.*** In an action raising statutory, regulatory, and due process challenges to the legality of the DHS Guidance governing third-country removals, on April 18, 2025, the District of Massachusetts certified a class under Rule 23(b)(2) consisting of most aliens who can be removed to third countries. *D.V.D. v. DHS*, 778 F. Supp. 3d 355, 378, 394 (D. Mass. 2025). All agree that Plaintiff is a class member. Dkt. 14 at 7.

The *D.V.D.* court entered a preliminary injunction based on due process concerns. The preliminary injunction required, *inter alia,* written notice of the country to which Immigration and Customs Enforcement (ICE) seeks to remove the alien and additional opportunities to raise a

fear-based claim. *Id.* at 392-93. Specifically, the court found that non-individualized diplomatic assurances do not satisfy due process and "offer no protection against either torture by non-state actors or chain refoulement, whereby the third country proceeds to return an individual to his country of origin." *Id.* at 390. The court also held that the DHS Guidance unlawfully failed to provide sufficient notice and opportunity for class members to be heard regarding any fear of removal to the third country. *Id.*

The Supreme Court stayed that preliminary injunction. *DHS v. D.V.D.*, 145 S. Ct. 2153 (2025) (*D.V.D. I*). After the district court purported to enforce its stayed injunction as to eight class members whom DHS sought to remove to South Sudan, the Supreme Court clarified that its "June 23 order stayed the April 18 preliminary injunction in full," and the district court could not "enforce an injunction that [the Supreme Court's] stay rendered unenforceable." *DHS v. D.V.D.*, 145 S. Ct. 2627 (2025) (*D.V.D. II*); *see also NIH v. Am. Pub. Health Ass'n.*, Order on Application for Stay, 25A103 (August 21, 2025) (Gorsuch, J., concurring) (Supreme Court's clarification order "should have been unnecessary").

On February 25, 2026, the District of Massachusetts entered a final judgment in *D.V.D. v. D.H.S.,* 821 F. Supp. 3d 102 (D. Mass. 2026). The First Circuit stayed that judgment pending appeal but dissolved its stay after affirming. *D.V.D. v. D.H.S.,* 26-1212, Order, (1st Cir. Sept. 23, 2026). On September 29, 2026, the Supreme Court again intervened to stay the classwide final judgment. *DHS v. D.V.D.*, 2026 WL 2917860 (Sep. 29, 2026) (*D.V.D. III*). The Supreme Court also granted certiorari and set the case for argument in December.

**B. This litigation.** Plaintiff is a native and citizen of Egypt who was admitted to the United States in 1998 as the child of a religious worker. He became a lawful permanent resident in 2021. Dkt. 14 at 2. In 2023, he was convicted of aggravated assault and possession of a synthetic narcotic and sentenced to 30 months of imprisonment and 24 months of probation. *Id.* On October 1, 2025, an immigration judge ("IJ") ordered him removed to Egypt, but deferred his removal to Egypt under the Convention Against Torture (CAT). *Id.* That deferral did not affect the validity of Plaintiff's removal order and left the government free to remove him elsewhere. *Riley v. Bondi,* 606 U.S. 259.265 (2025); 8 U.S.C. §1231(b); 8 C.F.R. § 1208.17(b)(2).

On April 28, 2026, Plaintiff was removed to Equatorial Guinea. Dkt. 14 at 3. In accordance with DHS Guidance, Plaintiff's removal was pursuant to credible diplomatic assurances from Equatorial Guinea that aliens removed pursuant to the nations' third-country removal arrangement will not be persecuted on a protected basis or tortured. *Id.*

On September 15, 2026, Plaintiff filed this case and sought emergency relief. Dkt. 1, 2. He asserted two claims: (1) violation of procedural due process under the Fifth Amendment; and (2) violation of the Administrative Procedure Act ("APA"), on the theory that his removal exceeded Defendants' statutory and regulatory authority; and (3) mandamus and equitable return-facilitation relief under 28 U.S.C. §1361 and 5 U.S.C. §706(1). *Id.*

On October 6, 2026, the district court consolidated Plaintiff's motion with the merits of his Complaint and granted it. Dkt. 14. The district court declared that Defendants' removal of Plaintiff to Equatorial Guinea without notice of the country of removal and a meaningful opportunity to raise a country-specific claim against removal there violated the Due Process Clause. *Id.* at 20.

As relief the court ordered Defendants to "take all available steps to facilitate Plaintiff's release from custody in Equatorial Guinea and return to the United States." *Id.* The court further enjoined Defendants from removing Plaintiff to any third country without first providing him notice of the country to which they intend to remove him and a "meaningful opportunity to raise a country-specific claim against removal before a neutral judge, including appeal of any decision or part thereof in that process." *Id.* Despite holding that the *D.V.D.* stay had no effect on Plaintiff's request for relief, the district court relied on and favorably cited the First Circuit and district court decisions in *D.V.D.* as supporting the relief the district court granted. Dkt. 14 at 8, 13, 15-16.

## **STANDARD OF REVIEW**

A stay decision turns on four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Reach Cmty. Dev. v. DHS*, 174 F.4th 1143, 1148 (9th Cir. 2026). The likelihood of success is the "most critical" factor, and the "last two factors

merge when the Government is the opposing party,"

## ARGUMENT

### I. THE SUPREME COURT'S STAY IN *D.V.D.* MANDATES A STAY IN THIS LIKE CASE.

This stay application is squarely controlled by the Supreme Court's decision to stay indistinguishable classwide declaratory relief in *D.V.D.* In recent days, two courts of appeals have agreed with the government that the Supreme Court's stay order controls in cases in which the alien is a *D.V.D.* class member seeking relief from third country removal. *Ojukwu*, 2026 WL 3032742; *Gakou*, 2026 WL 3044209.

"[W]hen [the Supreme] Court issues a decision, it constitutes a precedent that commands respect." *NIH v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658, 2663 (2025) (Gorsuch, J., concurring in part and dissenting in part). This includes stay decisions, which "squarely control[]" in "like cases." *Trump v. Boyle*, 145 S. Ct. 2653, at 2654 (2025); *Noem v. Nat'l TPS All.*, 146 S. Ct. 23,at 24 (granting second stay when "parties' legal arguments and relative harms" were "generally" the same as in previous stay application) (2025). The Court should grant a stay pending appeal in this "like" case, as there is no basis to circumvent the Supreme Court's

decisions establishing the status quo. The district court sought to distinguish this litigation from *D.V.D.* on two grounds, both meritless.

First, the district court concluded that the Supreme Court's stay orders are less binding than its merits opinions because they are "unreasoned." Dkt. 14 at 6. The court concluded it was instead bound by what it viewed as contrary Ninth Circuit precedent. *Id.* But, as the Supreme Court has recently reiterated, its stay orders are no less controlling even if they are issued without a full, written opinion. *Boyle*, 145 S. Ct. at 2654; *Nat'l TPS All.*, 146 S. Ct. at 24.

Second, the district court reasoned that this case is not "like" *D.V.D.* because *D.V.D.* is a class action, while this case is "an individual action, decided on the merits." Dkt. 14 at 6. But that logic is fundamentally flawed. That is no distinction at all. Indeed, in more honest passages, the district court refuted its pretense that this case is unlike *D.V.D.* by repeatedly citing *D.V.D.* analysis and analogizing Plaintiff to one of the named *D.V.D.* plaintiffs. *Id.* at 8, 15. That is plainly right. As discussed in detail below, all agree that Plaintiff is indisputably a member of the *D.V.D.* class, which was certified under Rule 23(b)(2) and does not permit members to opt out. Thus, by definition, this case is not merely just "like"

*D.V.D.*; it *is* part of *D.V.D.*, and is thereby controlled by the orders issued in that litigation given *D.V.D.*'s non-opt-out class. *See Boyle,* 145 S. Ct. at 2654.

Declining to grant a stay here would defy the Supreme Court's grants of interim relief. By the district court's logic, the Supreme Court's stay of the *D.V.D.* judgment is void because every *D.V.D.* class member may nevertheless obtain their own separate relief, on the same *D.V.D.* claims. Even though the Supreme Court has expressly permitted third-country removals of all class members to continue under the DHS Guidance, district courts could simply order return every time a class member is removed. Indeed, no stay of classwide relief would ever be effective because the claims of individual class members would never present "like" cases. That cannot be right.

Moreover, the district court's stated basis for evading the Supreme Court's stay is undermined by its explicit reliance on the *D.V.D.* courts' legal reasoning. Despite insisting that this case is not "like" *D.V.D.*, the court conceded that the facts of this case are "closely analogous" to that of O.C.G., a named plaintiff and class representative in *D.V.D.* whom the *D.V.D.* court ordered returned to the United States. Dkt. 14 at 15.

Without apparent irony or shame, the district court emphasizes that its decision "is consistent with—not in tension with—the rights declared in *D.V.D.*" *Id.* at 8.

On this point, at least, the district court is correct. But that is precisely the government's point: *D.V.D.* is not just a "like" case, it is in fact the *same* case because Plaintiff is a member of the *D.V.D.* class and cannot opt-out. Contrary to the district court's suggestion, Plaintiff does not get to cherry-pick which *D.V.D.* orders apply to him: clinging to the favorable *D.V.D.* declaratory relief and associated legal reasoning while eschewing the subsequent stay of that very relief.

"All told, the Supreme Court's decision to stay the district court's vacatur order in *D.V.D.* must 'inform how [this court] should exercise [its] equitable discretion in like cases.'" *Ojukwu*, 2026 WL 3032742, at *4 (quoting *Boyle,* 145 S. Ct. at 2654). Notwithstanding Plaintiff's or even this Court's "frustration with these events," the Supreme Court "has made clear that the equities favor the government" and therefore, this Court "must reach the same result in this similar case" and stay the district court's order. *Id.*

## II. THE GOVERNMENT WILL LIKELY SUCCEED ON THE MERITS

### A. Rule 23(b)(2) and res judicata prevent Plaintiff from bringing claims that duplicate those brought by the *D.V.D.* class.

#### 1. *Plaintiff is a member of the D.V.D. class and cannot opt out.*

There is no dispute that Plaintiff is a member of the *D.V.D.* class. Plaintiff had a final order of removal and was removed to a country other than the one named on his removal order. *See* Dkt. 14 at 1. As such, Plaintiff is definitively a member of the *D.V.D.* Rule 23(b)(2) class. 778 F. Supp. 3d at 378, 394. Because Plaintiff cannot opt out of this class, he cannot maintain a separate suit seeking the same relief on the same claims in another court. The district court erred by concluding otherwise.

Rule 23 authorizes individuals to sue "as representative parties on behalf of all members" of a class. Fed. R. Civ. P. 23(a). Before a court may certify a class, it must first determine that all four requirements of Rule 23(a) are satisfied and that the proposed class falls within one of the Rule 23(b) categories. Rule 23(a) requires, *inter alia*, that the class representative "will fairly and adequately protect the interests of the class." *Id.* R. 23(a)(4). And Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to

the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *Id.* R. 23(b)(2). Some class actions offer class members the opportunity to opt out of the class, but Rule 23(b)(2) classes are mandatory. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 361-62 (2011) (Rule 23 "provides no opportunity for … (b)(2) class members to opt out, and does not even oblige the [d]istrict [c]ourt to afford them notice of the action"). A judgment in a class action is binding on all class members, win or lose. *Cooper v. Fed. Reserve Bank*, 467 U.S. 867, 874 (1984).

This Court, like the other circuits, agrees that members of a certified class may not bring individual suits seeking the same relief sought by the class. *Crawford v. Bell*, 599 F.2d 890, 892-93 (9th Cir. 1979); *McNeil v. Guthrie*, 945 F.2d 1163, 1165 (10th Cir. 1991) ("Individual suits for injunctive and equitable relief … cannot be brought where there is an existing class action."); *Norris v. Slothouber*, 718 F.2d 1116, 1117 (D.C. Cir. 1983) (plaintiff whose "allegations substantially overlap those in" a pending class action should "be referred to the district

judge before whom the [class] action is pending").[1] This is especially the case in Rule 23(b)(2) classes, because "[t]he key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes*, 564 U.S. at 360 (quotation marks omitted). Indeed, in this precise context, many district courts and two courts of appeals have properly refused to grant relief against third-country removal to *D.V.D.* class members. *Ojukwu,* 2026 WL 3032742; *Gakou*, 2026 WL 3044209; *Solis Nolasco v. Noem*, 820 F. Supp. 3d 398, 406-08 (D. Md. 2026); *Ghamelian v. Baker*, 2025 WL 2049981, at *2-3 (D. Md. July 22, 2025); *I.V.I. v. Baker*, 2025 WL 1519449, at *2-3 (D. Md. May 27, 2025); *Sanchez v. Bondi*, 2025 WL 2550646, at *2-3 (D. Colo. Aug. 20, 2025); *Qasemi v. Kurzdorfer*, 2025 WL 2938607, at *6 (W.D.N.Y. Oct. 16, 2025).

The district court acknowledged that Plaintiff "appears to be a member of the *D.V.D.* class." Dkt. 14 at 7. But the court nevertheless

---

[1] *See also Gilespie v. Crawford*, 858 F.2d 1101, 1103 (5th Cir. 1988); *Groseclose v. Dutton*, 829 F.2d 581, 585 (6th Cir 1987); *Goff v. Menke*, 672 F.2d 702, 704 (8th Cir. 1982); *Bryan v. Werner*, 516 F.2d 233, 239 (3d Cir. 1975); *Horns v. Whalen*, 922 F.2d 835 (4th Cir. 1991).

chose to consider Plaintiff's claims and issue relief. *Id.* The district court advanced two theories for why this was proper, but both fail.

First, the district court noted that the decision to dismiss a separate lawsuit brought by a member of a certified class is discretionary. Dkt. 14 at 7 (citing *Crawford*, 599 F.2d at 893). The district court relied on *Pride v. Correa* to conclude that it had discretion to consider Plaintiff's claim even though he was a member of a related class action. *Id.*; *see* 719 F.3d 1130, 1133 (9th Cir. 2013). But *Pride* gets the district court nowhere, because the *Pride* individual plaintiff's claims were genuinely distinct from the related class action. In *Pride*, a class action which sought programmatic improvements to a prison medical system (for example, hiring more doctors and nurses and implementing better treatment protocols) did not preclude a class member from seeking *specific* treatment of enumerated medical issues. 719 F.3d at 1134, 1137-38.

Here, by contrast, the classwide relief issued in *D.V.D.* is that *each* member of the class cannot be removed to a third country unless provided with notice and an opportunity to challenge that removal beyond that afforded by the DHS Guidance. *D.V.D.*, 821 F.Supp.3d at 167. That is *precisely* the relief Plaintiff sought and received here. Dkt. 14 at 21-21.

And Plaintiffs' claims are substantively the same as those in *D.V.D.*, again unlike *Pride*. *Compare D.V.D.,* 821 F. Supp. 3d at 127-28 (describing claims) *with* Dkt. 1.

Even if the district court had discretion to determine whether to consider Plaintiff's claims, the Supreme Court's decision to stay the *D.V.D.* preliminary injunction and classwide judgment must "inform how [lower courts] should exercise [their] equitable discretion in like cases." *Boyle*, 145 S. Ct. at 2654. The Supreme Court has—on *three* separate occasions—intervened to establish the status quo that third-country removals can proceed under the DHS Guidance. By disregarding those stays and instead issuing its own relief against third-country removal to a *D.V.D.* class member, the district court clearly abused its discretion.

Second, the district court distinguished this case from *D.V.D.* because "the relief sought here does not duplicate the relief obtained in *D.V.D.*" Dkt. 14 at 7. The court noted that the *D.V.D.* classwide judgment does not address return for removals. *Id.* That dodge fails, because the district court *did* enjoin Defendants from removing Plaintiff to a third country, after his return here, without providing substantively the same additional "notice and opportunity" procedures ordered by the *D.V.D.*

court and stayed—*three times*—by the Supreme Court. Dkt. 14 at 20. It is also undermined by the court's own recognition that the *D.V.D.* court *has* ordered the return of a *D.V.D.* plaintiff, based on the same flawed legal analysis the court employed here.[2]

Regardless, that logic would not separate this case from *D.V.D.* The district court demanded Plaintiff's return from Equatorial Guinea only because the court concluded that his removal, pursuant to the DHS Guidance challenged in *D.V.D.*, was unlawful. The district court's due-process reasoning wholly overlaps with the issues being litigated in *D.V.D.*, and that is *precisely* what is precluded by Plaintiff's membership in the *D.V.D.* class.

Allowing members of a mandatory class to pursue their own individual actions "would allow interference with the ongoing class action," and could ultimately threaten the certification of the underlying

---

[2] This just highlights Plaintiff's gamesmanship. Plaintiff, like O.C.G., could have sought additional, individualized relief as part of the class action, but did not do so, presumably in an effort to nominally distance himself from the District of Massachusetts litigation in which the Supreme Court has repeatedly intervened. Many other plaintiffs have adopted the same tactic. *See, e.g., A.A.M. v. Andrews,* 815 F.Supp.3d 1124 (E.D. Cal. 2025); *Elshourbagy v. Bondi,* 817 F.Supp.3d 1102, 1113 (W.D. Wash. 2025) (collecting cases); *Torres v. Blanche,* 2026 WL 2163550 (D. Nev. July 27, 2026).

class by creating differences among the class members. *See McNeil*, 945 F.2d at 1165. As the Sixth Circuit explained in *Ojukwu,* "class certification has serious consequences for absent class members." *Ojukwu,* 2026 WL 3032742, at *3. That plaintiff is not entitled to an individual injunction due to the classwide stay is the straightforward, natural consequence of litigating a case as a class and being the party in the losing posture. By granting Plaintiff relief, the district court risks ordering relief that is either more or less than he will ultimately be entitled to under *D.V.D.* Regardless, Plaintiff, as a member of the Rule 23(b)(2) class, must seek relief through the class—not this separate action. The district court erred by concluding otherwise.

#### ***2. Plaintiff's separate lawsuit is barred by res judicata.***

If Rule 23(b)(2) were not enough, issue preclusion compels the same result after final judgment in a class action. Now that judgment has been entered (and, if that were not enough, affirmed on appeal) in *D.V.D.*, class members like Plaintiff are barred by *res judicata* from receiving a second bite at the apple on the same claims in different courts. "[U]nder elementary principles of prior adjudication a judgment in a properly entertained class action is binding on class members in any subsequent

litigation." *Cooper*, 467 U.S. at 874. The district court was wrong to suggest that an appeal affects the finality of the decision for *res judicata* purposes. Dkt. 14 at 9. "The established rule in the federal courts is that a final judgment retains all of its *res judicata* consequences pending decision of the appeal." *Tripati v. Henman,* 857 F.2d 1366, 1367 (9th Cir. 1988). To deny preclusion when a case is on appeal "would lead to an absurd result: Litigants would be able to refile identical cases while appeals are pending, enmeshing their opponents and the court system in tangles of duplicative litigation." *Id.*

Yet, that is precisely the absurd result the district court has created. In its attempt to avoid the effect of the *D.V.D.* final judgment, the district court reasoned that a declaratory judgment does not preclude a later action for further, coercive relief. Dkt. 14 at 9. This is true. But it does not follow that, when a declaratory judgment is stayed, it can nonetheless be enforced via injunctive relief. As Justice Kagan explained in *D.V.D.* itself, "I do not see how a district court can compel compliance with an order that this Court has stayed." *D.V.D. II*, 145 S. Ct. at 2630 (Kagan, J., concurring). But that is exactly what the district court has done here.

**B. Defendants are likely to succeed in this appeal.**

Even setting aside these threshold issues related to the *D.V.D.* class, the government is likely to succeed in this appeal for the same reasons explained in the government's application to stay the *D.V.D.* judgment. *See* Application for Stay, 26A406, at 22-37.[3] First and foremost, Plaintiff's claims are barred by 8 U.S.C. §1252[4] and FARRA. *Id.* at 22-28. Even if the district court had jurisdiction, Plaintiff's claims would fail on the merits. *Id.* at 32-37. Plaintiff was lawfully removed to Equatorial Guinea pursuant to credible diplomatic assurances that are ill suited for judicial second-guessing. When the Executive determines a country will not persecute or torture a person on his removal, that is conclusive. *Munaf v. Geren*, 553 U.S. 674, 702-703 (2008); *see id.* at 689 (explaining the need for judicial "circumspection" when "adjudicating

---

[3] Defendants acknowledge that 8 U.S.C. §1252(f)(1), which precludes the classwide relief granted in *D.V.D.*, does not apply to the individualized relief at issue here.

[4] Sections 1252(a)(5), (b)(9), and (g) bar Plaintiff's claims, which arise from the execution of his removal order and are inextricably linked to his order of removal. However, Defendants acknowledge that this Court rejected those arguments in *Ibarra-Perez,* 154 F4th 989 (9th Cir. 2025). Notably, the Supreme Court has granted certiorari on the jurisdictional issues in *D.V.D.*, and its forthcoming decision, not *Ibarra-Perez,* will govern those issues in this Court.

issues inevitably entangled in the conduct of our international relations"); *Kiyemba v. Obama*, 561 F.3d 509, 514 (D.C. Cir. 2009) (federal courts "may not question the Government's determination that a potential recipient country is not likely to torture a detainee"), *cert. denied*, 559 U.S. 1005 (2010).

Moreover, as this Court has recognized *en banc,* the process due under CAT "is that prescribed by the statute and implementing regulation." *Trinidad y Garcia v. Thomas*, 683 F.3d 952, 957 (9th Cir. 2012). As the district court implicitly recognized by granting relief only on Plaintiff's due process claim, the CAT regulations do not require additional process outside the context of removal proceedings. Regardless, even assuming Plaintiff has a liberty interest in not being removed to a country where he will be tortured, it does not follow that he has a liberty interest in *applying* for or *asserting* that relief on his own terms as the district court seemed to believe. Instead, Plaintiff could have sought the protection he seeks now in his original removal proceedings or sought to reopen those removal proceedings.

The district court was also wrong that this Court's precedent requires additional process. *Andriasian v. INS,* 180 F.3d 1033, 1041 (9th

Cir. 1999) is inapposite because it concerned the procedures required *during removal proceedings* concerning *designation* of a country of removal. This Court also took issue with the immigration court's failure in removal proceedings to give the alien the notice required by regulation. *Id.* at 1041. However, this Court did not suggest, much less create, a freestanding substantive right to notice of a *third* country and a new round of proceedings after an alien's removal proceedings have concluded and after the alien has received all notices required by regulation. *See id.* That kind of freestanding substantive right would be inconsistent with the principle (stated by this Court *en banc*) that a deportee only "possesses a narrow liberty interest: that the Secretary comply with her statutory and regulatory obligations" under the CAT and that the process due a deportee is merely "that prescribed by the statute and implementing regulation." *Trinidad y Garcia*, 683 F.3d at 957. Therefore, the CAT regulations do not require *any* additional process here and the DHS Guidance satisfies any implicated liberty interest.

### C. The district court lacked authority to order Plaintiff's release from foreign custody.

Finally, the district court erred to the extent that its order requires Defendants to secure Plaintiff's release from Equatorial Guinean

custody. The district court acknowledged "the deference owed to the Executive Branch in the conduct of foreign affairs." Dkt. 14 at 16 (citing *Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1018 (2025)). And the court emphasized that its order merely requires Defendants "to facilitate Plaintiff's return, not to affirmatively effectuate it." *Id.* But Plaintiff is in the custody of Equatorial Guinea, and although the court's order "does not prescribe the content of any diplomatic communication," it nevertheless requires Defendants to "tak[e] all available steps to facilitate Plaintiff's release from custody in Equatorial Guinea." *Id.* at 16, 20. To the extent that the district court's order requires Defendants to take any diplomatic action regarding Plaintiff, it has gone beyond mere facilitation of return and instead violated the separation of powers by inserting the judiciary into sensitive issues of foreign affairs. *See Abrego Garcia*, 145 S. Ct. at 1018. Accordingly, the court's order should, at the very least, be stayed to the extent that it requires Defendants to engage in diplomatic discussions or take any action beyond facilitating Plaintiff's return to the United States (*i.e.*, arranging the required travel documentation and transportation).

## III. THE EQUITABLE FACTORS FAVOR A STAY PENDING APPEAL

The remaining equitable factors clearly favor the government. The Supreme Court has granted certiorari in *D.V.D.* and may soon resolve the underlying legal issues raised by Plaintiff and the rest of the *D.V.D.* class. In the meantime, though, the Supreme Court has made clear that the equities favor the government. The district court—and this Court—must reach the same result in this case. By granting a stay of the classwide judgment in *D.V.D.*, the Supreme Court necessarily concluded that the balance of equities and public interest tipped in the Government's favor. *D.V.D. III*; *see Hollingsworth v. Perry,* 558 U.S. 183, 190 (2010).

The Supreme Court's decision to stay the *D.V.D.* preliminary injunction and classwide judgment must "inform how [lower courts] should exercise [their] equitable discretion in like cases." *Boyle*, 145 S. Ct. at 2654. And this is not just a like case; it is the *same* one, since Plaintiff is a litigant in *D.V.D.* by virtue of his class membership. Plaintiff may be frustrated by a faraway district court forcing him into a class action and thereby undermining his ability to pursue his own relief in his preferred venue. *Ojukwu*, 2026 WL 3032742, at *4. But the choice to certify the class "foreclos[es] adjudication by a number of different courts

and judges." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979).

The parties' legal arguments and relative harms are at minimum "generally" the same here as in *D.V.D. Nat'l TPS All.*, 146 S. Ct. at 24. The Government argued that the *D.V.D.* judgment caused "severe, irreparable harm to the government and the public interest." Application for Stay, 26A406, at 5; *see also AFGE v. Trump*, 148 F.4th 648, 656 (9th Cir. 2025); *Washington v. Trump*, 847 F.3d 1151, 1169 (9th Cir. 2017). Finding third countries willing and able to accept aliens is a delicate diplomatic endeavor, and judicial intervention to prevent removal pursuant to those arrangements—let alone to demand that the government facilitate return of already-removed aliens—substantially and irreparably interferes with U.S. foreign policy. *Id.* at 6. None of that is different here. And the harms Plaintiff asserts are well within the ambit of the concerns raised in *D.V.D.* Opposition to Application for Stay, 26A406, at 9-12 (Sept. 28, 2026).

The district court nevertheless ordered the same relief against third country removal which caused harm the Supreme Court found sufficiently grievous to merit a stay. Indeed, the district court went *beyond* what the *D.V.D* court ordered by requiring Defendants to

"facilitate" Plaintiff's return. The district court claimed that its order would not compel the United States to conduct diplomacy in any particular way. But when an alien is detained by a foreign government and the district court compels the United States to seek his return, that itself impermissibly interjects the court into the United States' diplomatic discussions with a foreign sovereign nation. Moreover, Plaintiff is discontent with that limitation and seeks to involve the district court even more directly. *See* Dkt. 20. And the district court has obliged, demanding onerous *daily* reports and declarations—underscoring the district court's intent to compel the Executive to conduct foreign policy and superintend how it does so. *See* Dkt. 21. And given the substantial and escalating compliance burdens that the district court is imposing on the Executive, this Court should issue an immediate administrative stay while it considers the request for a full stay pending appeal.

Whatever the lower courts may think of the Supreme Court's stay, they cannot openly defy a Supreme Court order by visiting an even more direct harm to the Executive Branch's authority to conduct foreign diplomacy. This Court must follow the Supreme Court's decision and

grant a stay.

Claims by the *D.V.D.* class have already generated three Supreme Court stay orders and victories for the government on the very same claims at issue here. This Court should grant a stay here rather than risking an unprecedented fourth such order.

## CONCLUSION

The Court should grant an immediate administrative stay and, after briefing on this motion, stay the district court's order pending appeal.

Dated: October 22, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

DREW C. ENSIGN
Deputy Assistant Attorney General

SARAH WELCH
Counsel to the Assistant Attorney General

MATTHEW P. SEAMON
Assistant Director

*/s/ Mary L. Larakers*
MARY L. LARAKERS
Senior Litigation Counsel
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 598-2443
Mary.L.Larakers@usdoj.gov

## CERTIFICATE OF COMPLIANCE

I hereby certify that the text of this motion is in double-spaced, proportionally spaced 14-point Century Schoolbook type, and the motion contains 5,464 words in compliance with Ninth Circuit Rules 27-1(1)(d) and 32-3(2).

*/s/ Mary L. Larakers*
MARY L. LARAKERS
Senior Litigation Counsel

## CERTIFICATE OF SERVICE

I hereby certify that, on October 22, 2026, I caused the forgoing to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ ECF system. Plaintiffs' counsel are registered CM/ ECF users and will be served through the CM/ ECF system.

*/s/ Mary L. Larakers*
MARY L. LARAKERS
Senior Litigation Counsel