**Case No. 26-6950**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**A.M.A.S,**

**Plaintiff-Appellee,**

**v.**

**MARKWAYNE MULLIN, et al.,**

**Defendants-Appellants**

**On Appeal from the United States District Court for the District of Arizona**
**District Court Case No. 26-cv-06601-PHX-JCH**

# OPPOSITION TO DEFENDANTS-APPELLANTS' MOTION FOR STAY PENDING APPEAL AND IMMEDIATE ADMINIISTRATIVE STAY

GREEN | EVANS-SCHROEDER
130 W. Cushing St.
Tucson, AZ 85701

Ami E. Hutchinson | AZ Bar No. 039150
ami@arizonaimmigration.net

Dana M. Camilleri | VA Bar No.76568
danac@arizonaimmigration.net

Counsel for Plaintiff-Appellee
*A.M.A.S.*

# TABLE OF CONTENTS

**INTRODUCTION** .......... **1**

**BACKGROUND FACTS** .......... **3**

A. A.M.A.S.'s Removal Proceedings and Grant of Deferral .......... 3
B. The Prior Habeas Action and A.M.A.S.'s Removal to Equatorial Guinea . 4
C. Plaintiff's Detention in Equatorial Guinea .......... 5
D. The District Court Proceedings .......... 7
E. The Government's Conduct Following the District Court's Order .......... 8

**ARGUMENT** .......... **10**

I. LEGAL FRAMEWORK GOVERNING STAYS .......... 11

II. DEFENDANTS-APPELLANTS' FAILURE TO ADDRESS IRREPARABLE HARM, EITHER BEFORE THE DISTRICT COURT OR IN THE MOTION FOR STAY, FORECLOSES THE REQUESTED RELIEF .......... 12

III. DEFENDANTS-APPELLANTS FAIL TO DEMONSTRATE LIKELIHOOD OF SUCCESS ON THE MERITS .......... 15

A. The Present Case is Not Bound by the Scope of D.V.D. .......... 15

B. Defendants' Jurisdictional Arguments Likewise Fail .......... 19

C. The District Court's Order Does Not Impede Foreign Affairs or Violate Separation of Powers .......... 19

IV. THE REMAINING NKEN FACTORS FAVOR A.M.A.S AND COUNSEL AGAINST A STAY PENDING APPEAL .......... 20

**CONCLUSION** .......... **21**

# INTRODUCTION

A.M.A.S. was granted deferral of removal from Egypt. The government, however, forcibly sent him to Equatorial Guinea—a country to which he has no ties and despite his repeated requests for a reasonable fear hearing. It is undisputed that, since the Government left him in Equatorial Guinea after transferring custody to Equatorial Guinean authorities, A.M.A.S. has been held under armed guard at both a decommissioned hotel, and later at La Luna Jail; threatened with death at gunpoint when he to refuse to return to Egypt; arrested, beaten, and jailed; and where he presently faces drastically deteriorating health without adequate medical care.

On October 6, 2026, the District Court of Arizona ordered that the Government facilitate A.M.A.S.'s return to the United States and provide weekly status reports. On October 20, Defendants-Appellants filed an appeal, followed by an emergency stay motion on October 22, wherein they ask this Court to stay the District Court's "remarkable" order that, it alleges, "flouts" the Supreme Court's stay in *D.V.D.* However, the government has not met its burden of demonstrating that it merits a stay, and A.M.A.S. respectfully requests that the Court issue an order denying the government's request.

As the District Court properly determined in this case, the Supreme Court's administrative stay of the *D.V.D.* ruling has no bearing on the government's obligation to facilitate A.M.A.S.'s return. As the District Court determined in this

case, an unexplained Supreme Court emergency stay ruling does not establish that the government is likely to succeed on the merits of its claims before the Supreme Court. As the District Court noted, this is not a like case to *D.V.D.,* which seeks to provide process to individuals *before* they are removed to third countries. Rather, A.M.A.S. brought an individual claim based on his experiences and requests relief that is specific to his own circumstances.

Moreover, contrary to the government's assertions in its request for an emergency stay of the ruling from this Court, there is simply nothing remarkable in the District Court's orders in this case, which do not in any way flout the Supreme Court's orders. Rather, the only remarkable aspect of this case is the government's unwillingness to comply with the District Court's orders. The government hides behind the Supreme Court's unreasoned administrative stay in *D.V.D.* because its continued assertions – in the face of extensively documented evidence – that it did not violate the statutes and regulations in removing A.M.A.S. to the custody of an authoritarian government are detached from the facts of this case.

Tellingly, the government's request for a stay does not meaningfully address or argue that the government will suffer irreparable harm absent a stay. As the notes to Circuit Rule 27-3 indicate, the emergency motions mechanism is "meant for parties facing significant harm[.]" Yet, the government makes no irreparable harm argument in its motion; instead, it simply references an "irreparable harm" argument

it apparently made to the Supreme Court in *D.V.D.,* that in any case, would not address the specifics of this claim. That failure should be fatal to the government's stay request.

In any event, the only irreparable harm in this case is the ongoing harm suffered by A.M.A.S. As the government is well-aware, A.M.A.S. has been hospitalized twice, but has not received sufficient medical care. His physical condition continues to deteriorate. Finally, the balance of equities and the public interest are not in the government's favor because the government was found to have violated federal laws. It is well-settled that there is no public interest in government action that is unlawful. In sum, the government has fallen well short of its burden of demonstrating it merits a stay of the District Court's ruling, and the Court should deny its request.

## BACKGROUND FACTS[1]

### A. A.M.A.S.'s Removal Proceedings and Grant of Deferral

A.M.A.S. (Plaintiff or Plaintiff-Appellee), "a native and citizen of Egypt, was admitted to the United States in 1998 as the child of a religious worker and became a lawful permanent resident in 2021." District Court Order (Dkt. 14) (Slip Opinion)

[1] As the District Court noted, the facts are "unrebutted." *A.M.A.S. v. Mullin*, --- F. Supp. 3d ---, 2026 WL 3026123, at *1 (D. Ariz. Oct. 6, 2026). Plaintiff-Appellee therefore incorporates and sets forth the factual findings from the District Court's decision herein. *Id.* at *1–2 (Slip Opinion, District Court Dkt. 14).

at 2 (citations to the record omitted). "In October 2023, he was convicted of aggravated assault and possession of a synthetic narcotic and sentenced to two and one-half years' imprisonment and two years' probation." *Id.* On January 3, 2024, DHS placed Plaintiff in removal proceedings. *Id.* "On October 1, 2025, an immigration judge ("IJ") ordered him removed to Egypt but granted deferral of removal under CAT, finding he 'faces a clear probability of torture in Egypt' because of his sexual orientation and his politically prominent family." *Id.* "DHS did not appeal, and it has never moved to terminate the deferral under 8 C.F.R. § 1208.17(d)." *Id.*

### B. The Prior Habeas Action and A.M.A.S.'s Removal to Equatorial Guinea

"On April 24, 2026, Plaintiff filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 challenging his immigration detention and seeking relief from third-country removal without notice." *Id.*, citing *A.M.A.S. v. Cantu*, No. CV-26-02888-PHX-JCH (D. Ariz.) "Before the Court ruled on the petition, Defendants removed Plaintiff to Equatorial Guinea on April 28, 2026." *Id.* "Plaintiff was not told his destination until shortly before the flight; when he asked for a fear interview, he was told it was too late, and he was carried onto the aircraft." *Id.*

"On May 6, 2026, the Court directed Respondents in the habeas action to address Plaintiff's allegation that he had been removed without a fear screening." *Id.* at 3. "Respondents filed the declaration of Vu Cam, an ICE Acting Unit Chief, who

attested: 'Equatorial Guinea provided diplomatic assurances that the aliens removed from the United States pursuant to the Third Country Removal agreement will not be subjected to persecution or torture,' the Department of State 'determined that the diplomatic assurances were credible,' and ICE followed DHS's March 30, 2025 Guidance Regarding Third Country Removals [ ] in removing Plaintiff." *Id*. "Mr. Cam further attested that Plaintiff's 'placement on the manifest for this charter served as the travel document' for his removal." *Id*.

Twelve days later, Plaintiff moved to voluntarily dismiss the habeas action on May 18, 2026, and the Court dismissed the action without prejudice.

**C. Plaintiff's Detention in Equatorial Guinea**

Upon his arrival in Equatorial Guinea, "U.S. authorities transferred Plaintiff to the custody of Equatorial Guinean authorities, who held him with other U.S. deportees under armed guard at the decommissioned Hotel Bamy in Malabo." *Id*.

As the District Court noted, the unrebutted record reflects the following chain of events:

- First, that "Detainees were subjected to verbal abuse, beatings, and recurring threats that they could be killed and buried where nobody would ever find them." *Id*.
- Second, that "Detainees were repeatedly told to return to their countries of origin. On September 1, 2026, a group of Ethiopian nationals who held U.S.

protection against removal to Ethiopia were returned there after an official asked whether they wanted to go to their country or to jail." *Id.*

- Third, "[o]n July 2, 2026, the African Commission on Human and Peoples' Rights requested that Equatorial Guinea adopt provisional measures, including refraining from transferring Plaintiff and thirteen other complainants against their will." *Id.* at 3–4.
- Fourth, "[o]n the night of July 31, 2026, after detainees began speaking with journalists, armed and masked officers dragged Plaintiff and four others from their rooms, handcuffed and assaulted them, and pointed guns at them." *Id.* at 4.
- Fifth, "[o]n September 5, 2026, police aimed rifles at Plaintiff while he knelt with his hands raised, and a plainclothes officer shouted, 'shoot him!'" *Id.*
- Sixth, "[o]n September 9, 2026, after Reuters published video of that incident and an interview with Plaintiff, officers confiscated the detainees' phones; Plaintiff was told the Reuters report was the reason." *Id.*
- Seventh, "[o]n September 11, 2026, Equatorial Guinean police arrested Plaintiff and another detainee. Witnesses reported that both men were bound with rope, hooded, and beaten." *Id.*
- And finally, that "Plaintiff has since been held incommunicado at an unknown location, reportedly without food or water." *Id.*

### D. The District Court Proceedings

On September 15, 2026, Plaintiff-Appellee filed the underlying action against the Secretary of Homeland Security, the Acting Director of ICE, the Attorney General, the Secretary of State, DHS, the Department of State, and the United States. Therein, he asserted three claims: "(1) violation of procedural due process under the Fifth Amendment; (2) violation of the Administrative Procedure Act ("APA"), on the theory that his removal exceeded Defendants' authority under 8 U.S.C. § 1231(b)(2), § 2242 of the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA") Pub. L. No. 105-277, div. G, 112 Stat. 2681-822 (codified at 8 U.S.C. § 1231 note), and 8 C.F.R. §§ 1208.17 and 1208.18; and (3) mandamus and equitable return-facilitation relief under 28 U.S.C. § 1361 and 5 U.S.C. § 706(1)." Slip Opinion (Dkt. 14) at 4–5.

"The same day, Plaintiff filed his Emergency Motion for a Temporary Injunction. The Court ordered a response to the Motion; Defendants responded, and Plaintiff replied." *Id.* at 5.

On October 6, 2026, the District Court issued a published order granting counts 1 and 3 of the complaint, dismissing count 2 as moot, and ordering Defendants to facilitate A.M.A.S.'s return to the United States. *Id.* at 7–12. The District Court further ordered an initial status report by October 9, 2026, followed by a subsequent report every seven days thereafter.

The Government filed an appeal of the District Court's Order with the Ninth Circuit Court of Appeals on October 20, 2026.

### E. The Government's Conduct Following the District Court's Order

Rather than take actions to facilitate A.M.A.S.'s return, the government's initial status reports revealed that Defendants-Appellants had succeeded in doing only the bare minimum. On October 20, counsel for Plaintiff-Appellee filed a report raising several concerns, including that Defendant-Appellee's declarant appeared to have no personal knowledge of the concrete steps being taken to facilitate A.M.A.S.'s return. (District Court at Dkt. 20) . Counsel further expressed concern at A.M.A.S.'s rapidly deteriorating health and attempts to share information with Defendants-Appellants, to no avail. Most importantly, however, Plaintiff-Appellee's counsel identified evidence indicating that Defendants-Appellants in fact *do* know A.M.A.S.'s location, and cited extensive reporting on direct communication between the United States and Equatorial Guinea as well as several DHS-contracted flights that had traveled over or around Malabo. (District Court at Dkt. 20).

On October 21, the District Court issued an updated order directing Defendants-Appellants to provide a supplemental status report within 24 hours of that decision and every weekday thereafter. *See* District Court at Dkt. 22 (Order dated Oct. 21, 2026). In doing so, the District Court identified evidentiary flaws in the declarations appended to Defendants-Appellants' status reports and expressed

"concerns" that Defendants-Appellants failed to identify any "real concrete steps taken to comply" with the October 6, 2026, order. *Id.*

Defendants-Appellants filed their first daily status report on October 22, 2026. *See* District Court at Dkt. 24. The report, accompanied by a declaration from Deportation Officer ("DO") Andrea Chiriboga Villacis, claimed that a U.S. Embassy official spoke with Plaintiff-Appellee by telephone that day and confirmed that he is at Hotel Bamy in Malabo. The Declaration further stated that Enforcement and Removal Operations ("ERO") submitted a request for Significant Public Benefit Parole (under 8 U.S.C. § 1182(d)(5)) on Plaintiff-Appellee's behalf on October 21, 2026. As to transportation, DO Chiriboga Villacis stated: "On October 22, 2026, [Removal Operations] headquarters advised that [an] anticipated third-country removal mission to Equatorial Guinea had been cancelled. Therefore, that mission is not available as a means to transport Petitioner to the United States." She added that no alternative flight, carrier, travel date, route, or port of entry had been finalized.

That same day, however, counsel for Plaintiff-Appellee became aware of a DHS-contracted aircraft that had departed Alexandria, Louisiana on October 22, 2026, and landed at the Malabo airport on October 23, 2026. An Emergency motion for a Temporary Injunction followed, wherein Plaintiff-Appellee requested that the Court enjoin DHS from departing Malabo without A.M.A.S. or without

demonstrating why they were unable to comply with the Court's orders. *See* District Court at Dkt. 25.

Also on October 23, 2026, the District Court issued an order directing Defendants-Appellants to address the discrepancy between the evidence presented by Plaintiff-Appellee and the statements made by DO Chiriboga Villacis, as well as, inter alia, (1) whether an aircraft "operated by or under contract with any Defendant, landed in Malabo on or about October 23, 2026, and if so, its purpose, its scheduled departure time, and its next destination; (2) whether that flight is the 'anticipated third-country removal mission to Equatorial Guinea" that DO Chiriboga Villacis stated was cancelled; and (3) why it was not reasonable and within Defendants-Appellants' control to place A.M.A.S. on that aircraft for return to the United States. *See* District Court at Dkt. 26 (Order dated Oct. 23, 2026).

In the present proceedings, meanwhile, the Government filed an Emergency Motion for Stay Pending Appeal and Immediate Administrative Stay on October 22, 2026 (Dkt. 8, 9), claiming that, if relief is not granted, the Government "will be forced to continue to facilitate [A.M.A.S.'s] return to the United States." Dkt. 8 at 2 (Form 16).

On October 23, 2026, this Court denied the request for an administrative stay and ordered the present Opposition to be filed by October 27, 2026. Dkt. 11.

## **ARGUMENT**

## I. LEGAL FRAMEWORK GOVERNING STAYS

The Government moves this Court to stay the District Court's order pending appeal. As such, the Government "bears the burden of showing that the circumstances justify an exercise of judicial discretion to issue the stay." *Doe #1 v. Trump*, 957 F.3d 1050, 1058 (9th Cir. 2020). To secure a stay, "the Government must show that it is likely to succeed on the merits and that it is likely to suffer irreparable harm without a stay." *Berkeley Homeless Union v. City of Berkeley*, --- F.4th ---, 2026 WL 3206465, at *1 (9th Cir. Oct. 26, 2026), quoting *Trump v. California*, No. 26A124, 609 U.S. ---, --- S. Ct. ---, 2026 WL 2473573, at *2 (U.S. Aug. 24, 2026). Other factors include whether the issuance of a stay will "substantially injure the other parties interested in the proceeding; and [ ] where the public interest lies." *Reach Community Development v. DHS,* 174 F.4th 1143, 1146 (9th Cir. 2026) (quoting *Nken v. Holder,* 556 U.S. 418, 426 (2009)). Of these factors, "the likelihood of success on the merits and the likelihood of irreparable harm are the most critical." *Trump v. California*, 2026 WL 2473573, at *2 (U.S. Aug. 24, 2026); *accord Mi Familia Vota v. Fontes*, 111 F.4th 976, 981 (9th Cir. 2024) (per curiam).

The Ninth Circuit's application of the *Nken* factors "operates on a sliding scale, such that if there is a probability or strong likelihood of success on the merits, a relatively low standard of hardship is sufficient." *Berkeley Homeless Union*, 2026

WL 3206465, at *1 (citation omitted). At the same time, however, the Court will deny a stay absent "a certain threshold showing regarding irreparable harm, . . . regardless of the [ ] proof regarding the other stay factors." *Doe #1*, 957 F.3d at 1058 (citation omitted); *see also Berkeley Homeless Union*, 2026 WL 3206465, at *1 ("When a party fails to demonstrate irreparable harm, the *Nken* analysis can conclude.") (citation omitted).

## II. DEFENDANTS-APPELLANTS' FAILURE TO ADDRESS IRREPARABLE HARM, EITHER BEFORE THE DISTRICT COURT OR IN THE MOTION FOR STAY, FORECLOSES THE REQUESTED RELIEF

In light of the foregoing, this Court must "first consider the government's showing on irreparable harm, then discuss the likelihood of success on the merits under the sliding scale approach." *Al Otro Lado v. Wolf*, 952 F.3d 999, 1007 (9th Cir. 2020). This is so because the "minimum threshold showing" for a stay pending appeal requires that irreparable injury is *likely* to occur. *Id*. (citing *Nken,* 556 U.S. at 434). Even a showing of "some possibility of irreparable injury" is insufficient. *Doe #1*, 957 F.3d at 1057 (citing *Nken*, 556 U.S. at 434). Therefore, "under the sliding scale approach, a stay applicant's 'burden with regard to irreparable harm is higher than it is on the likelihood of success prong, as she must show that an irreparable injury is the more probable or likely outcome.'" *Al Otro Lado*, 952 F.3d at 1007 (quoting *Leiva-Perez v. Holder,* 640 F.3d 962, 968 (9th Cir. 2011)).

Here, the Government fails to address irreparable injury at all. And, unlike in *Reach Community Development*, the Government's sole references to "injury" or "harm" before the District Court were in the context of "alleged harm" faced by Petitioner-Appellee. *See* District Court at Dkt. 9, Response to Motion for Temporary Injunction.

In *Reach Community Development*, this Court granted a stay request even though the Government did not explain how it would suffer irreparable injury absent a stay. 174 F.4th at 1149. It did so, however, because the Government "plainly argued irreparable harm before the district court." *Id*. *See also Dickinson v. Trump*, 174 F.4th 634 (9th Cir. 2026) (granting stay where government argued irreparable harm "extensively in response to the request for a preliminary injunction and requested a stay of the preliminary injunction.").

In this case, the District Court specifically noted the Government's failure to address any of the *Nken* factors "beyond their merits arguments." District Court at Dkt. 14, p. 19 ("They identify no irreparable injury from facilitating plaintiff's return, which forecloses no lawful future action."). Indeed, the Government's only argument before the District Court that could plausibly be construed to address injury to Defendants-Appellants is the contention that the court's Order implicates foreign policy concerns. District Court Dkt. 9 at 12, 13–15. But even then, Defendants-Appellants appear more concerned with alleged hardship to Equatorial

Guinea. *Id*. at 14 (arguing that an order granting relief would "direct the actions" of a foreign government). Moreover, the Government made these statements under the assumption that A.M.A.S.'s claim is *entirely* circumscribed—and foreclosed—by *D.V.D.* As explained below, however, that is not the case.

Thus, Defendants-Appellants have failed to demonstrate (much less argue) that the denial of a stay is likely to result in irreparable injury to the Government. This Court should therefore find this issue waived. *See Clark v. Time Warner Cable,* 523 F.3d 1110, 1116 (9th Cir. 2008) (noting that the Court "will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief.") (citation omitted).

Finally, even assuming the Government's brief reference to harm vis-à-vis the arguments presented in *D.V.D.*, Dkt. 9 at 33, is sufficient to avoid waiver, Defendants-Appellants have failed to distinguish this case from *D.V.D.* or demonstrate any irreparable harm resulting from the District Court's Order granting equitable relief—a remedy that was not addressed in *D.V.D.*

As this Court has found, "[t]he key word in [the irreparable harm factor] is *irreparable*. Mere injuries, however substantial, in terms of money, time and energy necessarily expended . . . are not enough." *Al Otro Lado,* 952 F.3d at 1008 (citation omitted). In this case, the only irreparable harm is that which has been suffered by A.M.A.S., and which he continues to suffer on a daily basis.

## III. DEFENDANTS-APPELLANTS FAIL TO DEMONSTRATE LIKELIHOOD OF SUCCESS ON THE MERITS

Having failed to address or demonstrate irreparable harm, this Court need not consider the remaining *Nken* factors. *See Doe #1*, 957 F.3d at 1058; *see also Berkeley Homeless Union*, 2026 WL 3206465, at *1 ("When a party fails to demonstrate irreparable harm, the *Nken* analysis can conclude.") (citation omitted). Even if it does, however, Defendants-Appellants' motion should be denied where the Government cannot make "a commensurately strong showing of a likelihood of success on the merits to prevail under the sliding scale approach." *Al Otro Lado,* 952 F.3d at 1010.

### A. The Present Case is Not Bound by the Scope of D.V.D.

On March 23, 2025, a group of noncitizens filed a putative class action lawsuit against the Department of Homeland Security, challenging the agency's "new, unlawful policy of removing noncitizens with final orders to 'third countries' – i.e., countries not mentioned in their final removal orders – without providing them with effective notice and a meaningful opportunity to claim that they reasonably feared persecution or torture in those countries." *D.V.D. v. U.S. Department of Homeland Security*, -- F.4th -- , 2026 WL 2797801, at *1 (1st Cir. Sept. 18, 2026) (explaining case history).

The lawsuit eventually incorporated challenges to the agency's March 30, 2025, policy guidance, and its July 9, 2025, memorandum. *See* Guidance Regarding

Third Country Removals (Mar. 30, 2025); Memorandum from Todd M. Lyons, Acting Director, ICE, To All ICE Employees, Third Country Removals Following the Supreme Court's Order in Department of Homeland Security v. D.V.D., No. 24A1153 (U.S. June 23, 2025) (collectively, "the Guidance"). *See D.V.D.*, 2026 WL 2797801, at *2–3.

On February 25, 2026—after several interim decisions and appeals—the District Court for the District of Massachusetts held that third-country removals pursuant to the Guidance are unlawful in three ways. *D.V.D. v. U.S. Dep't of Homeland Sec.*, 821 F. Supp. 3d 102 (D. Mass. 2026).

Put simply, the judgment declared applicable law to require DHS to engage in statutory sequencing when removing all class members and to provide every class member with effective notice and a meaningful opportunity to raise any fear-based claim regarding their removal to a third country. The judgment also set aside the Guidance as unlawful under the APA insofar as it authorizes removals that do not comply with these requirements. *D.V.D.*, 2026 WL 2797801, at *4.

The Government appealed, and on September 18, 2026, the First Circuit Court of Appeals largely affirmed the District Court's vacatur of the Guidance pursuant to 5 U.S.C. § 706(2)(A) as not in accordance with law. The First Circuit later issued an order clarifying that, pursuant to its September 18 decision, the previous stay pending appeal had been dissolved. On September 29, 2026, however, the Supreme

Court granted the Government's application for stay of the First Circuit's order, without explanation. *See* DHS v. D.V.D., -- S.Ct. --, 2026 WL 2917860 (Mem). Defendants-Appellants cite the Supreme Court's Order as proof that this Court must stay the District Court's "astonishing order." Dkt. 8 at 1.

Defendants-Appellants' insistence that *D.V.D.* "squarely controls" this case is misguided. Dkt. 8 at 2.

First, as noted by Judge Hinderaker below, the *D.V.D.* litigation did not resolve the merits of any individual's due process claim. District Court Order (Dkt. 14) at 6. That is, even if the Guidance is ultimately upheld, Defendants-Appellants' actions were unlawful *as applied* to Plaintiff because they violated *Plaintiff's* due process rights. *See, e.g.*, *Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999) ("Failing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process." *See id.* (determining that a "last minute" designation of an alternative country without a meaningful opportunity to apply for protection "violate[s] a basic tenet of constitutional due process"); *see also Najjar v. Lynch*, 630 F. App'x 724 (9th Cir. 2016) (unpublished) ("In the context of country of removal designations, last minute orders of removal to a country may violate due process if an immigrant was not provided an opportunity to address his fear of

persecution in that country."). Plaintiff-Appellee's due process claims do not hinge on the presence or absence of a class-wide injunction. *See* District Court Order (Dkt. 14) at 6. Thus, regardless of whether Plaintiff is a member of the *D.V.D.* class, his independent claims are not precluded and res judicate does not apply.

Second, it follows that Plaintiff-Appellee's case is not a "like case." Rather, "[i]t is an individual action, decided on the merits, brought by a plaintiff who has already been removed and who presents unrebutted evidence of detention and abuse in the receiving country." District Court Order (Dkt. 14) at 6.

Moreover, the relief sought by Plaintiff—specifically, the facilitation of his return to the United States—is not the same relief sought by class members in *D.V.D.* District Court Dkt. 14 at 7. The systemic injunctive relief sought in *D.V.D.*—notice and an opportunity to be heard before removal to a third country—"does nothing to secure the return of a class member who has already been removed without them." *Id*. at 8. An independent order granting remedial relief does. *See Noem v. Abrego Garcia*, __ U.S. __, 145 S. Ct. 1017, 1018 (2025) (per curiam) (recognizing that if a non-citizen was removed in violation of the law, federal courts may require the Government to "facilitate" the individual's return and to "ensure that his case is handled as it would have been had he not been improperly sent" elsewhere).

Finally, even assuming class membership, the Ninth Circuit has held that courts have discretion to consider claims even where another court has jurisdiction

over the same matter and can achieve the same result. *See Crawford v. Bell*, 599 F.2d 890, 892-93 (9th Cir. 1979). "This discretion applies specifically where the other court's matter is a class action." District Court, Dkt. 14, at 7 (citing *Crawford*, 599 F.2d at 892, *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013)). District Courts in the Ninth Circuit routinely cite to *Crawford* and *Pride* when choosing to exercise jurisdiction over similar claims. *See, e.g.*, *Arenado-Borges v. Bondi*, No. 25-cv-02193-JNW, 2025 WL 3687518 (W.D. Wash. Dec. 19, 2025); *Chen v. Blanche*, No. C26-832-KKE, 2026 WL 914807 (W.D. Wash. Apr. 3, 2026); *Castillo Rivas v. Bondi*, No. C26-0134-KKE, 2026 WL 295705 (W.D. Wash. Feb. 4, 2026).

For these reasons, Plaintiff-Appellee's claims are not precluded by *D.V.D.*

### B. Defendants' Jurisdictional Arguments Likewise Fail

Defendants-Appellants provide three alternative bases for this Court to deny Plaintiff's motion for lack of jurisdiction. *See* Dkt. 8 at 20, n.4. These are the same three bases raised before the District Court (Dkt. 9 at 10-12), and they should be rejected for the same reasons briefed below. *See* Dkt. 10. Plaintiff's claims are not precluded on any of the grounds raised by Defendants-Appellants. *See id.* (addressing the Government's arguments under 8 U.S.C. § 1252(g) ), §§ 1252(a)(5) and (b)(9) (the "zipper" clause), and § 1252(a)(4) and § 2242(d) of the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA").

### C. The District Court's Order Does Not Impede Foreign Affairs or Violate Separation of Powers

Finally, Defendants-Appellants argue that the Distract Court lacked authority to "order Plaintiff's release from foreign custody." Dkt. 8 at 22. Rather than requiring Defendants to "engage in diplomatic discussions or take any action beyond facilitating Plaintiff's return to the United States," however, the District Court ordered Defendants to take "all available steps" to *facilitate* it, including thorough acts that lie entirely within their control: "travel documentation, transportation, admission or parole at a port of entry, and the handling of [A.M.A.S.'s] case once he returns." District Court Dkt. 14 at 16.

## IV. THE REMAINING *NKEN* FACTORS FAVOR A.M.A.S AND COUNSEL AGAINST A STAY PENDING APPEAL

Because the government is a party to this case, the final two factors—the public interest and assessing how a stay would affect the interest of the public—merge. *Leiva-Perez*, 640 F.3d at 970 (citation omitted). "While we consider the 'public interest in preventing aliens from being wrongfully removed, particularly to countries where they are likely to face substantial harm,' we are also mindful of the fact that there is also a public interest 'in prompt execution of removal orders[.]'" *Id*. (quoting *Nken*, 556 U.S. at 435-36). Here, there was neither a lawful removal order to Equatorial Guinea, nor a lawfully executed removal to Equatorial Guinea. *See Valle del Sol Inc. v. Whitin*g, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is clear that it would not be equitable or in the public's interest to allow the [government] ... to violate the requirements of federal law." (citations omitted)); *Luu v. Bowen*, No.

5:25-CV-03145-MEMF-SP, 2025 WL 3552298, at *10 (C.D. Cal. Dec. 11, 2025) ("'Public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution.'" (*quoting Preminger*, 422 F.3d at 826); *see also Rodriguez v.Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (noting that the government "cannot suffer harm from an injunction that merely ends an unlawful practice"). In any event, as the District Court determined: "Defendants' legitimate interest in enforcing the immigration laws is not impaired: facilitating Plaintiff's return does not prevent Defendants from removing him in the future in compliance with the Constitution and the relevant statutes. Nor does the relief require Defendants to take any step outside their own control." *A.M.A.S.,* 2026 WL 3026123 at *9 (Dkt. 14). As such, the public interest and balance of the equities plainly tips in A.M.A.S.'s favor and mitigates against any grant of a stay of the District Court's decision.

## CONCLUSION

For these reasons, the Court should deny the Government's requested stay.

Respectfully submitted,

s/ Ami E Hutchinson
Ami E. Hutchinson

s/ Dana M. Camilleri
Dana M. Camilleri

Green Evans-Schroeder, PLLC
Attorneys for Plaintiff-Appellee

## CERTIFICATE OF COMPLIANCE

I hereby certify that the text of this response complies with the typeface requirements of Rule 27(d)(1) because it has been prepared in a proportionately spaced typeface and Times New Roman 14-point font. This response is 4,833 words and therefore complies with Rule 27(d)(2).

s/ Ami E Hutchinson
Ami E. Hutchinson
Green Evans-Schroeder, PLLC

## CERTIFICATE OF SERVICE

I, Ami E. Hutchinson, the undersigned attorney, hereby certify that on the 27th day of October, 2026, I caused this Opposition to Defendants-Appellants' Motion for Stay Pending Appeal to be filed electronically using the appellate ACMS system. I certify that all participants in the case are registered ACMS users and will be served through the ACMS system.

s/Ami E. Hutchinson
Ami E. Hutchinson